**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROBINSON OUTDOORS, INC.,<br><br>Defendant. | Civil No. 10-151 (JRT/JJG)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Eric J. Steinhoff and Brian A. Wood, **LIND JENSEN SULLIVAN & PETERSON, PA**, 150 South Fifth Street, Suite 1700, Minneapolis, MN 55402, for plaintiff/counter defendant.

Michael C. Mahoney, **MAHONEY ANDERSON LLC**, 125 West Lake Street, Suite 201, Wayzata, MN 55391, for defendant/counter claimant.

After consumers sued Robinson Outdoors, Inc. ("Robinson") in multiple jurisdictions for false representations of the attributes of odor-eliminating clothing ("underlying actions"), Robinson sought defense and indemnification from Westfield Insurance Co ("Westfield"), which was denied. In this action, Westfield seeks a declaratory judgment that it is not obligated to defend and indemnify Robinson for the underlying actions. The Court will grant summary judgment to Westfield because the claims in the underlying consumer actions against Robinson are not covered by the Westfield insurance policies or are specifically excluded from the policies. Robinson's summary judgment motion seeking dismissal of Westfield's affirmative defenses to

Robinson's counterclaims and Westfield's motion to exclude testimony will both be denied as moot.

## BACKGROUND

### I. ROBINSON

Robinson is a Delaware corporation formed in 2002 that sold odor eliminating products, clothing, and hunting gear. (Def.'s Mem. in Supp. of its Mot. for Partial Summ. J. at 1, Docket No. 216.)[1] Although Robinson ceased doing business in 2005, it operates today as Robinson Outdoor Products, LLC. (*Id.*)

Robinson sold its odor eliminating products under a license granted by ALS Enterprises, Inc. ("ALS"). (*Id.* at 3.) Under the license, Robinson was contractually obligated to use the advertising, logos, brands and marks provided by ALS, and ALS created or approved all Robinson advertising. (*Id.*)

### II. UNDERLYING ACTIONS/COMPLAINTS

In 2009, consumers sued Robinson[2] (along with several other parties, including ALS) in multiple jurisdictions. (Compl. at 3, Docket No. 1; Compl., Ex. B, Docket No. 1-5 to 1-8 [hereinafter "underlying complaints"].) The consumers bought

---

[1] Although the Court cites to several documents that were filed under seal, the Court has not used any of the underlying material encompassed by the protective order (Docket No. 124). Therefore, this Order is not filed under seal.

[2] The complaints originally named Robinson Outdoors, Inc. f/k/a Robinson Laboratories, Inc. as a defendant. (Compl., Ex. B, Underlying Compls., Docket No. 1-5 to 1-8.) Robinson Outdoor Products, LLC was later added as an additional defendant in amended complaints. (Def.'s Mem. in Supp. of its Mot. for Partial Summ. J. at 5.)

Robinson's hunting clothing based on representations regarding the clothing's ability to eliminate odor. (Compl. at 3-4). The complaints alleged that Robinson falsely represented the attributes of odor-eliminating clothing, deceiving consumers into purchasing the clothing. (Pl.'s Mem. Supp. Summ. J., Docket No. 223.)

Robinson summarized the claims of the underlying complaints in this way:

> In [the class action complaint by Jonathan] Lange, the plaintiff contended he had five separate counts . . . (1) false advertising in violation of California Business & Professions Code -5 § 17500;[3] (2) violations of the California Consumer Legal Remedies Act; Civil Code § 1750, et seq.;[4] (3) violations of the California Business and Professions Code § 17200;[5] (4) violations of common law unjust enrichment;[6] and (5) civil conspiracy.[7]

---

[3] "Defendants' advertisements for Defendants' odor eliminating clothing contain untrue or misleading statements concerning the quality of Defendants' advertised products. The actual odor eliminating capability of Defendants' odor eliminating clothing is much less, if any, than Defendants represented. . . . Defendants knew, or, in the exercise of reasonable care, should have known that the statements . . . were false and misleading." (Compl., Ex. B, *Lange* Compl. ¶¶ 118, 121, Docket No. 1-5.)

[4] "Defendants violated Civil Code § 1770(a)(7) because they falsely and uniformly represented to consumers that the purported odor eliminating clothing was of the particular standard described in their advertising and marketing materials, *i.e.*, they uniformly represented that the clothing eliminated odor and could be 'reactivated' when neither was true." (*Lange* Compl. ¶ 140.)

[5] "Unlawful, as proscribed by Cal. Bus. & Prof. Code § 17500, in that Defendants' advertisements contain unfair, deceptive, untrue or misleading statements of material fact which were and are known by Defendants, or which by the exercise of reasonable care should be known to be untrue or misleading . . . ." (*Lange* Compl. ¶ 153.)

[6] "Defendants knowingly advertised and sold to Plaintiff and members of the Class clothing that was not as Defendants represented. . . . As a result . . . Defendants have realized substantial revenues . . . ." (*Lange* Compl. ¶¶ 162-63.)

[7] Alleging that Defendants conspired to misrepresent the odor-eliminating properties of their clothing in advertisements and the "conspiracy was furthered and protected by each Defendant's knowledge of the misrepresentations being made by other defendants" and "concerning their odor eliminating clothing." (*Lange* Compl. ¶¶ 168-172.)

> The complaints in the other Five Actions make the same factual allegations but tailor their consumer actions to the particular state where the action is filed.

(Def.'s Mem. Supp. Partial Summ. J. at 20.)  Each claim in the underlying complaints depends, at least in part, on the Defendants' misrepresentations of the odor-eliminating capabilities of their products.

Robinson sought defense and indemnification from Westfield for the underlying actions under insurance policies it had purchased from Westfield.  (Pl.'s Mem. Supp. Summ. J. at 2.)  Westfield denied coverage on multiple grounds.  (Def.'s Mem. Supp. Partial Summ. J. at 5.)  First, Westfield asserted that the allegations of the underlying complaints did not fall within its policies.  (*Id.*)  Second, Westfield contended two exclusions in the policies barred coverage – specifically (1) that the advertisements were published prior to the policy period and (2) that the injuries alleged in the underlying complaints arose from the failure of Robinson's products to conform with statements of quality or performance made in Robinson's advertisements.  (*See id.*)

Robinson and Robinson Outdoor Products, LLC eventually settled the claims in the underlying actions with a sealed settlement agreement that was reduced to formal written agreements in June 2010.  (Aff. of Eric J. Steinhoff, June 1, 2011, Ex. 7, Stipulated Confidential Final Order for Settlement (Monetary Terms) at 1-2, Docket No. 224.)  After settlement, Westfield again refused Robinson's request for indemnification. (Def.'s Mem. Supp. Partial Summ. J. at 5.)

### III. WESTFIELD'S INSURANCE POLICIES

At issue in this case is whether the terms of the insurance policies issued by Westfield cover the attorney and settlement costs of the underlying actions. Westfield issued two Commercial General Liability insurance policies to Robinson, effective December 30, 2004 to December 30, 2005 and December 30, 2005 to December 30, 2006 ("Westfield Policies"). (Compl. at 2 & Corrected Ex. A, Insurance Policies.) The policy effective from December 30, 2004 to December 30, 2005 also contained umbrella coverage. (*Id.*)

The General Liability Coverage Form contains the following provisions:

SECTION I—COVERAGES . . .

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damaged because of **"personal and advertising injury"** to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

**2.   Exclusions**

This insurance does **not** apply to:

b.  Material Published With Knowledge of Falsity

    "Personal and advertising injury" arising out of oral and written publication of material, if done at the direction of the insured with knowledge of its falsity.

    **c.**    **Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. . . .

    **g.**    **Quality Or Performance Of Goods – Failure To Conform To Standards**

"Personal and advertising injury" arising out of the **failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement"**. . . .

SECTION V—DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. . . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following **offenses**: . . .

    d.    Oral or written publication, in any manner, of material that **slanders or libels a person or organization or disparages a person's or organization's goods, products or services**; . . .

    f.    The **use of another's advertising idea** in your "advertisement"; or

    g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Compl., Corrected Ex. A, Insurance Policies, Docket No. 1-10 at 29, 33-34, 40, 43 (emphasis added).)

The umbrella coverage policy effective December 30, 2004 to December 30, 2005 contains the following provisions:

SECTION I—COVERAGES . . .

1. INSURING AGREEMENT

   (1) We will pay "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "personal injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "property damage" to which this insurance does not apply. . . .

   (2) This **insurance applies only if** the "personal injury" or "property damage" occurs during the policy period and is caused by "an occurrence" and **prior to the policy period, no insured . . . knew that the "personal injury" or "property damage" had occurred** . . .

   (3) "Personal injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured . . .

   (4) "Personal injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim"

      (1) Reports all, or any part, of the "personal injury" or "property damage" to us or any other insurer.

      (2) Received a written or verbal demand or claim for damages because of the "personal injury" or "property damage"; or

      (3) Becomes aware by any other means that "personal injury" or "property damage" has occurred or has begun to occur. . . .

2. EXCLUSIONS . . .

   f. Personal And Advertising Injury

      This insurance does **not** apply to:

      (2) Material Published With Knowledge of Falsity

         "Personal and advertising injury" arising out of oral and written publication of material, if done at the direction of the insured with knowledge of its falsity.

      (3) **Material Published Prior To Policy Period**

         "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. . . .

      (7) **Quality Or Performance of Goods – Failure To Conform To Statements**

         "Personal and advertising injury" arising out of the **failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement"**. . . .

SECTION V—DEFINITIONS . . .

16. "Occurrence" means an accident or offense resulting in "personal injury" or "property damage".

   b. With respect to subsections b., c., e., f., g., and h. of the definition of "personal injury", an offense includes a series of offenses of the same or similar nature.

   c. With respect to subsections e., f., g., and h. of the definition of "personal injury", an offense includes a series of offenses in which the same or similar advertising material is used regardless of the number or kind of media used.

All "personal injury" and "property damage" resulting from an accident or offense shall be considered as resulting from one "occurrence". . . .

17. "Personal and advertising injury" means injury . . . arising out of one or more of the following **offenses**: . . .

   d. Oral or written publication, in any manner, of material that **slanders or libels a person or organization or disparages a person's or organization's goods, products or services**; . . .

   f. The use of another's **advertising idea** in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

24. "Suit" means a civil proceeding in which damages because of "personal injury" or "property damage" to which this insurance applies are alleged . . .

(*Id.* at Docket No. 1-12 at 3-4, 6, 14, 16-18 (emphasis added).)

## IV. DECLARATORY JUDGMENT ACTION

In January 2010, Westfield filed this action seeking a declaratory judgment that it had no duty to defend or indemnify Robinson in the underlying actions. (Docket No. 1.) In February 2010, Robinson brought a counterclaim seeking coverage and monetary damages for Westfield's breach of contract for failing to defend and indemnify Robinson in the underlying actions.[8] (Docket Nos. 7, 19.) Westfield answered by alleging nine affirmative defenses. (Docket No. 35.)

---

[8] Robinson also brought a bad faith claim (Docket No. 7) which it later attempted to revise to a breach of contract claim (Docket No. 19). This Court dismissed that claim. (Docket No. 33.)

# ANALYSIS

## I. WESTFIELD'S MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND

Westfield has now moved for summary judgment against Robinson, seeking a declaration that Westfield has no duty to defend or indemnify Robinson in the underlying actions. The Court finds that the Westfield Policies do not cover the underlying claims. Moreover, even if there were coverage for the underlying claims, the Court finds the claims are excluded from coverage by specific exclusions in the Westfield Policies. Accordingly, the Court will grant Westfield's motion.

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.     Westfield Policies' Coverage of the Claims

A federal court exercising diversity jurisdiction construes an insurance contract in accordance with state law. *Langley v. Allstate Ins. Co.*, 995 F.2d 841, 844 (8th Cir. 1993). The parties agree that Minnesota law governs this action. Under Minnesota law, an insurer's obligation to defend is contractual. *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997). Interpretation of an insurance policy is a matter of law. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). If the language of the insurance contract is unambiguous, it is given its plain and ordinary meaning; if the language is ambiguous, it is construed narrowly against the insurer. *Id.* Robinson, as the insured, bears the initial burden of establishing coverage, and Westfield, as the insurer, bears the burden of demonstrating that a policy exclusion applies. *See id.*

At issue is whether any of the claims in the underlying actions are covered by the Westfield Policies. *See AMCO Ins. Co. v. Inspired Techs. Inc.*, 648 F.3d 875, 880 (8th Cir. 2011) (noting that under Minnesota law, the duty to defend even a single claim "creates a duty to defend all claims"). In order for coverage to attach, the underlying complaints must allege one of the types of "personal or advertising injury" covered by the Westfield Policies. Robinson argues that the underlying complaints sufficiently allege two types of covered "personal or advertising injury" because they allege that Robinson published advertising material that libeled, slandered or disparaged the goods and products of other manufacturers and that Robinson used the advertising ideas of another.

### 1. Libel, Slander or Disparagement

Robinson asserts that coverage should attach because the underlying complaints allege sufficient facts to establish a claim for defamation (either libel or slander) or disparagement. The Westfield Policies provide coverage for "Personal or advertising injury . . . arising out of one or more of the following offenses: . . . Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.'" (Insurance Policies, Docket No. 1-10 at 43.) The Court finds that the Westfield Policies do not provide coverage because the underlying complaints did not bring a claim for libel, slander, or disparagement; and the complaints were brought by consumers, not Robinson's competitors.

Critically, Robinson fails to identify any **claim** in the underlying complaints that explicitly alleges slander, libel or disparagement. Because "the underlying factual circumstances recited by a plaintiff . . . should not be converted into possible, but not asserted, causes of action," a factual assertion in a complaint without a claim is not sufficient to give rise to coverage. *Id.* at 1134; *see also Ross v. Briggs and Morgan*, 540 N.W.2d 843, 848 (Minn. 1995) (holding that taking allegations pled to allege one claim and equating them with an unpled claim is "to engage in a far too generous reading of the complaint"). Although Robinson points to an allegation in the *Lange* complaint that the defendants "disparage[d] those that disagreed with their claims" (*Lange* Compl. at ¶ 90.), no claim in any of the underlying complaints pled slander, libel or disparagement. *Cf. Miller v. ACE USA*, 261 F. Supp. 2d 1130, 1133 (D. Minn. 2003) (noting that a court

must focus on the claims that are pled, not the conduct being asserted to prove the claims).

Furthermore, Robinson fails to identify any assertion in the underlying complaints that a defamatory statement harmed the **plaintiffs'** reputations. "To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'" *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919-20 (Minn. 2009) (quoting *Steumpges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)). Because the plaintiffs in the underlying actions did not plead damage to their reputations, they would be unable to plead a defamation claim. Consequently, Robinson has not met its burden of showing that the underlying complaints should elicit coverage because they allege defamation.

Robinson also contends the underlying complaints allege that sales of the defendants' odor-eliminating products were enhanced by defendants' disparagement of other manufacturers of odor-dampening hunting clothing. However, in order to be actionable, defamatory words must refer to the plaintiff. *See MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n* 546 F.3d 533, 542 (8th Cir. 2008) (quoting *Brill v. Minn. Mines*, 274 N.W.2d 631, 633 (Minn. 1937)). Because the underlying actions were brought by consumers, not other manufacturers, the underlying complaints cannot be interpreted to state a claim for disparagement against the manufacturers. The Court concludes that

Robinson has failed to demonstrate that the Westfield Policies should apply because the injury to Robinson arose from slander, libel, or disparagement.

### 2. Use of "Another's Advertising Idea"

Robinson also asserts that the Westfield Policies apply because the underlying complaints concern the veracity of its advertising. Because Robinson's advertising was provided by ALS, Robinson asserts its injury arose from the "use of another's advertising idea." The Westfield Policies define covered "personal or advertising injury" as "injury . . . arising out of one or more of the following **offenses**: . . . The use of another's advertising idea in your 'advertisement'." (Insurance Policies, Docket No. 1-10 at 43 (emphasis added).) The Court finds that Robinson has not used another's advertising idea within the meaning of the Westfield Policies.

Other courts have interpreted the offense of using of "another's advertising idea" to mean the "wrongful taking of the manner by which another advertises its goods or services." *Champion Labs., Inc. v. Am. Home Assurance Co.*, No. 09-C-7251, 2010 WL 2649848, at *5 (N.D. Ill. June 30, 2010) (internal quotation marks omitted). *See also Greenwich Ins. Co. v. RPS Prods., Inc.*, 882 N.E.2d 1202, 1211 (Ill. App. Ct. 2008) (finding that use of an advertising idea requires **misappropriation** of the advertising ideas or style of doing business).[9] Robinson's use of ALS's advertising ideas was not

---

[9] Westfield presents no case law to support its assertion that this language would cover the **licensed** use of another's advertising idea. Moreover, the underlying complaints did not allege that Robinson took the advertising ideas of any of the **plaintiffs** in the underlying actions. *See, e.g.*, *Rose Acre Farms, Inc. v. Columbia Cas. Co.*, 772 F. Supp. 2d 994, 1003 (S.D. Ind.

(Footnote continued on next page.)

wrongful and did not constitute an offense because it was done under a license granted by ALS.

Robinson further alleges that the Westfield Policies' language was ambiguous and should be construed narrowly and strictly against Westfield. To the extent that Robinson identified an ambiguity, it asserts that particular terms within the Westfield Policies are undefined.[10] The Court finds, upon reviewing the Westfield Policies' language as a whole, that the clause's language, when read in context, is unambiguous and refers to the misappropriation of another's advertising idea. *See Smitke v. Travelers Indem. Co.*, 118 N.W.2d 217, 218 (Minn. 1962) ("[T]he pertinent provisions must be read and studied independently and in context with all relevant provisions and the language of the policy as a whole.") The Court concludes that Robinson has failed to demonstrate that the Westfield Policies should apply because injury to Robinson arose out the "use of another's advertising idea."

### C. The Underlying Claims are Specifically Excluded from Coverage

Even if Robinson had met its burden of establishing coverage under the Westfield Policies, the claims in the underlying complaints are specifically excluded from coverage

---

(Footnote continued.)

2011) ("We are hard-pressed to understand how use of a co-defendant's idea, as opposed to one of the plaintiff[']s, could be considered an 'offense.'").

[10] Specifically, Robinson asserts the clause is ambiguous because "advertising" "advertising idea" "first publication" "oral" "material" and "written" are not defined in the Westfield Policies.

by the policy exclusion for "Quality Or Performance of Goods – Failure To Conform To Statements."[11] The "Failure to Conform" clause states, "This insurance does not apply to . . . 'personal and advertising injury' arising out of the failure of goods, products, and services to conform with any statement of quality or performance made in your 'advertisement.'" (Insurance Policies, Docket No. 1-10 at 33-34 & Docket No. 1-12 at 6.) The Minnesota Supreme Court has held that if "the policy contains an exclusion clause," the burden is on the insurer "to prove the applicability of the exclusion . . . ." *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 313 (Minn. 1995). "Exclusions are narrowly interpreted against the insurer." *Id.*

All of the **claims** asserted by the plaintiffs in the underlying complaints relate to Robinson's products' failure to conform to statements concerning the performance of the products. In Minnesota, a court is instructed to focus on the "claims set forth, not the '**conduct** being asserted to prove the **claim[s]**.'" *Miller*, 261 F. Supp. 2d at 1133 (emphasis in original) (quoting *Meadowbrook*, 559 N.W.2d at 420). Robinson asserts that there are statements in the underlying complaints that do not allege the products failed to perform as advertised. However, because the **claims** asserted by the plaintiffs in

---

[11] Westfield also asserts that coverage is barred under the Westfield Policies under the policy exclusion for "Material Published Prior to the Policy Period." Although Westfield provided examples of advertisements like those complained of in the underlying complaints that were published before the coverage date (Steinhoff Aff., Ex. 3 & Ex. 4), it is not clear that every type of advertisement complained of was published prior to the policy period. Viewing the facts in the light most favorable to Robinson, this exclusion is not broad enough to exclude all claims in the underlying complaints.

the underlying complaints all relate to failure to conform with quality or performance, other factual assertions in the underlying complaints do not matter.

In sum, even if the Court was to find that Robinson had met its burden of establishing coverage under the Westfield Policies, Westfield has adequately demonstrated that the claims in the underlying complaints are excluded from coverage by the failure to conform exclusion. As a result, the Court will grant summary judgment to Westfield.

## II.    ROBINSON'S PARTIAL MOTION FOR SUMMARY JUDGMENT

In response to Robinson's counterclaim seeking insurance coverage and monetary damages for Westfield's failure to defend and indemnify it, Westfield filed nine affirmative defenses. In its motion for partial summary judgment, Robinson requests dismissal of all of Westfield's affirmative defenses. Because Westfield is entitled to summary judgment, the Court need not resolve the motion and will deny it as moot.

## III.   WESTFIELD'S MOTION TO EXCLUDE

Westfield has moved to exclude the expert testimony of Aaron Hasler and Scott Shultz. Because Westfield is entitled to summary judgment, the Court will deny this motion as moot.

**ORDER**

Based on the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

      1.      Plaintiff's Motion for Summary Judgment [Docket No. 221] is **GRANTED**.

      2.      Defendant's Motion for Summary Judgment [Docket No. 214] is **DENIED as moot**.

      3.      Plaintiff's Motion to Exclude Expert Testimony [Docket No. 225] is **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  November 17, 2011  
at Minneapolis, Minnesota.

                                                                     s/ John R. Tunheim  
                                                                     JOHN R. TUNHEIM  
                                                              United States District Judge